UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**CARLOS SPEED,**                  )
                                   )
              **Plaintiff,**  )
                                   )
      v.                          )
                                   )
**BOBBY MILLS,** *et al.***,**     )
                                   )
              **Defendants,** )
                                   )   Civil Action No. 12-cv-1368 (ESH)
**BOBBY MILLS,**                   )
                                   )
              **Third Party Plaintiff,** )
                                   )
      v.                          )
                                   )
**DISTRICT OF COLUMBIA**           )
**GOVERNMENT,**                    )
                                   )
              **Third Party Defendant.** )
_____)

**MEMORANDUM OPINION**

      Third party plaintiff Bobby Mills has sued the District of Columbia Government ("the District"), seeking relief pursuant to 42 U.S.C. § 1983, for the alleged taking of certain real property in violation of the Fifth and Fourteenth Amendments of the United States Constitution. Mills seeks declaratory relief, mandamus, unspecified damages, and attorneys' fees. Before the Court are the District's Motion to Dismiss the Complaint ("Def. Mot."), Mills' Response ("Pl. Resp."), and the District's Reply ("Def. Reply").[1] For the reasons set forth below, the District's motion will be granted.

---

[1] In deciding the District's motion, the Court has also reviewed various documents in the record, in accordance with the general rule that documents outside the complaint may be considered on a

**BACKGROUND**

I.  **FACTUAL BACKGROUND**

On August 11, 1994, the Law Offices of Hazel & Thomas filed an application with the Government of the District of Columbia, Department of Finance and Revenue ("OTR"), to subdivide Lot 810 in Square 4112.  (*See* Pl. Resp. at 3; Ex. A to Third Party Complaint for Declaratory Relief, Mandamus, and Damages Against the District of Columbia ("Compl.").)  The record owner of the lot was identified in the application as Crimson Bryant Mews Limited Partnership ("CB Mews"), a Virginia limited partnership acting through Crimson Partners, LP, general partner; Apartment 1904, Inc., its general partner; and Lewis D. Friedland, vice-president.  (*See* Ex. A to Compl.)  The requested subdivision would create two equal lots, each measuring 17 feet wide.  (*See id.*)[2]  The cover letter that accompanied the application asked that it be processed "as soon as possible, as the subject property is in the process of being sold."  (*Id.*)

On December 8, 1994, while the subdivision application was pending, CB Mews sold Lot 810, Square 4112 to Bobby Mills.  (*See* Compl. ¶ 7; Ex. B to Compl.)  That property was described in the deed and recorded in the Office of the Recorder of Deeds for the District of Columbia as:

---

motion to dismiss under Rule 12(b)(6) if "referred to in the complaint" and "integral to" the plaintiff's claim.  *Kaempe v. Meyers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

[2] There is a great deal of confusion over the parameters of Lot 810, as well as the precise lines of the subdivision.  The plat submitted with the application for subdivision indicated that Lot 810 contained two houses each described as "under constr." and "2 sty. frame," with the requested subdivision line running along the "party wall" between the two semi-detached houses.  The street addresses of each building were indicated as "1832" and "1834."  (Ex. A to Compl.)  According to city property records of which the Court takes judicial notice, 1834 Bryant St. NE exists on Lot 811, which is not at issue in this litigation.  Lot 810 contained 1832 Bryant St. NE and side yard, and the ultimate subdivision ran through the house.  According to city records, Lot 861 consists of the majority of the house while Lot 860 is the remainder of the house and the side yard.  *See* DC Property Quest Report for 1832 Bryant Street NE, http://propertyquest.dc.gov; *see also* Pl. Resp. at 3 n.1.

> Lot 810 as contained in Lot 21, Square 4112, as per a plat duly recorded in the Office of the Surveyor for the District of Columbia in Deed Book 178, Page 153.
>
> Note: As of the date hereof the said property is designated on the records of the Assessor for the District of Columbia for assessment and taxation purposes as Lot 810 in Square 4112.

(Compl. ¶ 9; Ex. B to Compl.)  On the same date, Mills executed a Deed of Trust with B.F. Saul Mortgage Company ("Saul"), pursuant to which he obtained financing to purchase the property.  (*See* Compl. ¶ 10; Ex. C to Compl.)  Mills was never notified that the subdivision application was pending.  (*See* Compl. ¶ 8.)  After Lot 810 was conveyed from CB Mews to Mills, CB Mews ceased to exist and its authority to do business was terminated by the Commonwealth of Virginia on December 31, 1994.  (*See id*. ¶ 22.)

On February 3, 1995, the Surveyor for the District of Columbia entered a plat of record subdividing Lot 810 into two new tax lots designated as Lot 860 and Lot 861.  (*See* Compl. ¶ 11; Ex. D to Compl.)  At the time the plat was recorded, Mills was the owner in fee simple of Lot 810 and CB Mews did not retain any right, title, or interest in the property.  (*See* Compl ¶ 11.)  The plat was not signed by Mills or Saul, nor was an affidavit reflecting that Mills was the owner attached to the plat, in violation of D.C. regulations.[3]  (*See id*. ¶¶ 16, 18; Ex. D to Compl.)

---

[3] The relevant D.C. Municipal Regulations provide: "No land or ground in the District of Columbia shall be subdivided for purpose of creating a lot of record, except in conformity with this chapter." D.C. Mun. Regs. Subt. 10-B § 2701.1.  "Where a lot of record is subdivided for the purpose of creating another lot of record, it shall be effected in a manner as not to violate the provisions of this chapter or any other District of Columbia regulations." *Id*. § 2701.2.  "No part of a lot of record shall be sold or transferred unless, prior thereto, the lot shall be subdivided in conformity with the provisions of this chapter nor shall any subdivision containing any part of the lot be admitted to record unless the requirements of this paragraph have been complied with." *Id*. §2701.3.

"Upon completion of the plat of subdivision and prior to recording thereof, the plat shall be forwarded to the owner or his or her agent for necessary signature." *Id*. § 2705.1.  "The plat of subdivision shall be signed in ink by the owner in fee simple of the land proposed to be

After Lot 810 was subdivided, OTR issued tax bills for Lots 860 and 861, but not for Lot 810. (*See* Compl. ¶ 19.) The tax bills for Lot 860 were sent to Saul and then, when Mills refinanced, to Navy Federal Credit Union, and were paid from Mill's escrow account. (*See id*. ¶ 19; 11/9/11 Affidavit of Bobby Mills ("Mills Affidavit"), Ex. E to Compl.)) The tax bills for Lot 861 were sent to an unknown person or persons and were never paid. (*See* Compl. ¶¶ 19, 21.) On July 20, 2001, the District sold Lot 861 to Fidelity Tax Co. Op. at a tax sale, with CB Mews listed as the "assessed" party. (*See id*. ¶¶ 21, 23.) On April 22, 2002, Fidelity Tax Co Op assigned its right, title, and interest in Tax Lot 861 to Heartwood 88 LLC ("Heartwood"). (*See id*. ¶ 23; Ex. G to Compl.) On June 6, 2002, Heartwood foreclosed on Lot 861. (*See* Compl. ¶ 24 (citing *Heartwood 88, LLC v. Bryant Mews, et al*., Case No. 02-CA-004605 L).)

On August 11, 2003, Mills purported to sell his property to Carlos Speed. (*See* Compl. ¶ 25; Ex. H to Compl.). The deed identified the property as:

> Lot 810 as contained in lot 21, square 4112, as per a plat duly recorded at the office of the surveyor for the District of Columbia on deed book 176 at page 153.

---

subdivided, and his or her signature shall be witnessed by two (2) persons and notarized." *Id*. § 2705.2.

"The plat of subdivision shall contain an affidavit by the owner executing the plat of subdivision to the effect that the following requirements are met: (a) They are the owners in fee simple of the property proposed to be subdivided; (b) They are in peaceful occupation thereof; and (c) There are no suits or actions pending affecting the title to the property." *Id*. § 2705.3. "In the event the property is encumbered by a trust, the assent of the trustee shall be shown on the plat." *Id*. § 2705.4.

"The plat of subdivision shall contain a certification by the Finance Officer, D.C. Property Tax Division, that . . . [t]he owner whose name appears on the plat of subdivision is the owner of the property to be subdivided" *Id*. § 2706.1(a).

4

Note: Property is now known as lot 860, Square 4112.[4]

(*See* Compl. ¶ 26; Ex. H to Compl.)

On March 25, 2008, the District issued a Deed of Property Acquired Through Tax Sale for Lot 861 to Heartwood, based on the July 2001 tax sale. (*See* Compl. ¶ 26; Ex. I to Compl.) The deed was signed by Mayor Adrian Fenty. (*See* Compl. ¶ 26; Ex. I to Compl.) In May 2009, Heartwood contacted Mills and requested that he convey "a small piece of land next to the house that was still in [his] name" to Heartwood. (Mills Affidavit ¶ 18.) On May 12, 2009, in exchange for consideration of $1,000, Mills executed a deed purporting to convey Lot 861 to Heartwood in fee simple. (*See* Def. Mot. at 5; Pl. Resp. at 11.) The deed described the property as:

> Lot now designated as assessment and Taxation Lot numbered 861 in Square Number 4112 containing 538 square feet, as shown on Assessment and Taxation Plat Numbered 3777-T among the records of the Office of the Surveyor of the District of Columbia, as per Assessor's Order No. 73364 on February 3, 1995.
>
> Address: 1832 Bryant St. NE, Washington, DC 20018.

(5/12/09 Deed between Mills and Heartwood, Ex. 3 to Def. Mot.)[5]

On February 25, 2010, Heartwood notified Speed that Speed's title to the house at 1832 Bryant Street NE was invalid, and Speed and his family would be forced to vacate. (*See* Compl. ¶ 28.)

---

[4] Reflecting the continuing confusion in this case, the District quotes the deed as describing the property as "now known as lot 861, square 4112" (Def. Mot. at 9), while plaintiff quotes the same deed as describing the property as "now known as lot 860." The copy of the deed that exists in the record as Ex. H to the Complaint, is nearly illegible, but to the Court's eyes, plaintiff is correct that it reads "lot 860."

[5] Although the deed indicates that Mills received no consideration, the parties agree that he was in fact paid $1,000. (*See* Def. Mot. at 5; Pl. Resp. at 11; Def. Reply at 10.)

## II. PROCEDURAL HISTORY

On February 25, 2010, Speed filed suit against Mills; land surveyors R.C. Kelly and Associates, Inc. and Robert C. Kelly, Jr.; and Chicago Title Insurance Company. (*Speed v. Mills et al.*, 11-1536 ("*Speed I*") [ECF Doc. 4-3 at 172-223].) On November 15, 2011, Mills filed a Motion for Leave of Court to File Third Party Complaints Against Hon. Vincent C. Gray, Mayor of the District of Columbia, and Heartwood. (*See* Pl. Resp. at 5.) The Court granted the motion as to Heartwood but denied it as to Mayor Gray, on the grounds that the District of Columbia was the proper party. (*See id.*) On December 8, 2011, Mills filed a third party complaint against Heartwood and on the same date, filed a claim with the District of Columbia pursuant to the Superior Court's instructions. (*See id.*) On December 19, 2011, Mills filed a third party complaint against NFCU. (*See id.*)

On June 7, 2012, Mills moved for leave to join the District as a third party defendant. (*See* Pl. Resp. at 6.) On June 14, 2012, the District denied Mill's December 8, 2012 claim, indicating that "'we have reviewed the file and the facts contained therein do not indicate any tort liability on the part of the District of Columbia or any of its employees.'" (*Id.* (quoting 6/14/12 Letter from LaShonda Wright, DCORM Tort Liability Claims, D.C. Government, Office of Risk Management, Tort Liability Division to James T. Pitts, Ex. K to Compl.).)

In its Omnibus Order dated July 13, 2012 and docketed July 25, 2012, the Superior Court granted Mills' motion to join the District as a third party defendant. (*See* Omnibus Order, Ex. 1 to Def Mot., at 1, 14; Def. Mot. at 2.) In the same Order, the Court granted summary judgment to Heartwood and NFCU, dismissing them from the case. (*See* Omnibus Order at 1, 14.) On July 19, 2012, Mills filed a third party complaint against the District. (*See* Pl. Resp. at 6.) Speed's claims against R.C. Kelly and Associates, as well as Robert C. Kelly, were withdrawn

because the business entity had ceased to exist.  (*See id*. at 2.)  Chicago Title paid nominal damages to Speed to settle his claims against it.  (*See id*.)  On March 20, 2012, Speed dismissed with prejudice his claims against Mills.  (*See* Notice of Removal [ECF No. 1] at 2.)

On August 17, 2012, the District removed the case to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1441, *et seq*.  (*See id*.)  On September 24, 2012, the District moved to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted and 12(b)(1) for lack of subject matter jurisdiction over any potential local law claims.  (*See* Def. Mot. at 2.)

## ANALYSIS

**I.      STANDARD OF REVIEW**

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts must first assume the veracity of all "well-pleaded factual allegations" contained in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  Next, courts must determine whether the allegations "plausibly give rise to an entitlement to relief" by presenting "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" in that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In determining whether a complaint fails to state a claim, [courts] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [courts] may take judicial notice," *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), and documents "appended to [a] motion to dismiss and whose authenticity is not disputed" if they are "referred to in the complaint and are integral" to a plaintiff's claim.

*Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (considering content of documents on motion to dismiss where complaint relied on documents' terms and where documents were judicially noticeable); *see also Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (noting that matters outside the pleadings do not include "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss" (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

## II.      42 U.S.C. § 1983

Section 1983 "authorizes equitable relief and compensatory damages against any 'person' who, under color of law, deprives another of a constitutional right." *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 424-25 (D.C. Cir. 2005).  The District may be considered a "person" liable under § 1983 "only if [its] agents acted pursuant to municipal policy or custom." *Id.* at 425 (internal quotation marks and citation omitted); *see Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).  Thus, "[t]o impose liability on the District under . . . § 1983, [a plaintiff] must show 'not only a violation of his rights under the Constitution or federal law, but also that the [District's] custom or policy *caused* the violation.'" *Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007) (quoting *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004)) (emphasis added).  In other words, plaintiff must show that an official policy or custom is "the 'moving force of the constitutional violation.'" *Miller v. Barry*, 698 F.2d 1259, 1261 (D.C. Cir. 1983) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

## III.     MILLS' § 1983 CLAIM PREMISED ON THE FOURTEENTH AMENDMENT

Mills asserts a section 1983 claim premised on the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment reads, in pertinent part: "No State shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, sec. 1. As Mills concedes, the District of Columbia is not a state, and therefore the Fourteenth Amendment does not apply to the District of Columbia. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Powers–Bunce v. Dist. of Columbia*, 479 F.Supp.2d 146, 153 (D.D.C. 2007). (*See* Pl. Resp. at 15.). Plaintiff's section 1983 claim based on the Fourteenth Amendment is accordingly dismissed.

### IV.     MILLS' § 1983 CLAIMS PREMISED ON THE FIFTH AMENDMENT

Mills also asserts section 1983 claims premised on the due process clause and the takings clause of the Fifth Amendment. The Fifth Amendment due process clause, like the Fourteenth Amendment, protects citizens from being "deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V. The takings clause of the Fifth Amendment prohibits the taking of private property "for public use, without just compensation." *Id*. Unlike the Fourteenth Amendment, the Fifth Amendment applies to the District of Columbia. *Bolling*, 347 U.S. at 499.

#### A.     Takings Claim

Mills argues that the alleged "'taking' occurred through the filing of an illegal plat by the Surveyor purporting to subdivide Mr. Mills' property; the issuance of a certification by the Chief Financial Officer that taxes were not paid on one half of the property described in the illegal plat; and the issuance of a[] tax deed by the Mayor purporting to convey title to one half of the property described in the illegal plat to a stranger for the unpaid taxes." (Pl. Resp. at 4.) Defendant argues correctly that Mills has failed to adequately allege Section 1983 liability on the

part of the District, insofar as he has not identified an unconstitutional policy, custom, or practice adopted or implemented by the District that caused his injuries.[6]  However, the Supreme Court has held that takings claims can be stated directly under the Fifth Amendment, without recourse to a statutory remedy, because of "the self-executing character of the constitutional provision with respect to compensation. . . ." *United States v. Clarke*, 445 U.S. 253, 257 (1980) (internal quotation marks and citation omitted).  *See also First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal.*, 482 U.S. 304, 314 (1987).

Nonetheless, Mills fails to properly state a takings claim.  First, the subdivision itself took nothing from Mills.  Where he once owned one large lot, he now owned two smaller lots.  It was not until Lot 861 was sold for unpaid taxes that anything was "taken" from Mills.  However, while the tax sale deprived Mills of title to a portion of property that was lawfully his, it cannot be considered a "taking" under the Fifth Amendment.  The sale took place pursuant to the District's taxing power, not its power of eminent domain, its regulatory power, or any other power enabling it to take or encumber private property for a public purpose. *See Indus. Bank of Washington v. Sheve*, 307 F. Supp. 98, 99 (D.D.C. 1969) ("[a] tax sale is not a government taking for which just compensation must be paid under the Constitution after judicial proceedings"); *Sol-G Const. Corp. v. United States*, 231 Ct. Cl. 846 (1982) (finding in foreclosure case that "[p]laintiff's loss is the kind of consequential injury which results from lawful Government action, and does not entitle it to compensation as a Fifth Amendment taking."); *Golden v. Mercer Cty. Tax Claim Bureau* (*In re Golden*), 190 B.R. 52, 57 (Bankr. W.D. Penn. 1995) ("In a tax sale context, the takings clause is not dispositive nor the appropriate

---

[6] The Court also has some doubt as to whether Mills has in fact suffered any injury, insofar as he was paid not once but twice for his interest in the property  – first by Speed and then by Heartwood.

basis for starting an inquiry . . . . The purpose of tax sales is not to strip the taxpayer of his property, but to [e]nsure the collection of taxes.").

As the Supreme Court explained, "[t]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).  Mills' property was not taken for a public purpose; rather it was sold because of taxes that were not paid, even if the reason they were not paid was due, at least in part, to negligence by the District.  On these facts, Mills may well have a cause of action under common law or under D.C. municipal regulations, but he does not have a takings claim under the Fifth Amendment.

### B. Due Process Claims

Although he merely alluded to due process in his complaint, Mills raises both procedural due process and substantive due process claims in his response to the District's motion.  (*See* Pl. Resp. at 14, 15.)  Section 1983 is generally considered to provide the exclusive federal remedy for claims of constitutional violations committed under color of state law.  *See Jackson v. District of Columbia*, 672 F. Supp. 22, 24 (D.D.C.1987) ("Courts have recognized that where 'Congress has provided an alternative remedial scheme, which is intended to be a substitute for direct recovery under the constitution [– such as § 1983 –] a *Bivens*-type action is inappropriate'" (quoting *Gladden v. Barry*, 558 F.Supp. 676, 678 (D.D.C.1983))); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).  Because Mills does not allege the existence of a municipal policy or custom, he fails to state a due process claim under Section 1983.

Mills argues that the complaint contains adequate factual allegations, specifically (1) that "the Surveyor for the District of Columbia filed a plat of record in his office purporting to subdivide Mills' property in complete disregard for applicable laws of the District requiring a signed affidavit of the property owner, permission from the mortgage holder, and certification from the Finance Officer, DC Property Tax Division, that the name appearing as the 'owner' of the property is the owner of the property to be subdivided"; (2) that "the District of Columbia Office of Tax and Revenue ceased issuing bills for Lot 810 (Mills' property) and commenced issuing tax bills for Lots 860 and 861, the purportedly newly created tax lots"; (3) that "the Chief Financial Officer for the District of Columbia, sold purported Lot 861 to Fidelity Tax Co Op for $1998.73 in unpaid taxes"; and (4) that "the Hon. Adrian M. Fenty, Mayor of the District of Columbia, issued (and signed) a deed for purported Lot 861 giving title to the property to Heartwood 88, LLC." (Pl. Resp. at 13.) Mills summarizes, "[t]he Complaint alleges 'that the most senior government official responsible for a particular action in the chain of events all acted to deprive Mills of his property.'" (*Id*. at 14.)

Significantly, however, there are no allegations that any of these actions were based on a municipal policy, custom, or practice of the District. Appearing to concede that there is no evidence of a general policy motivating these actions, Mills quotes the Supreme Court's seminal decision in *Pembaur* for the proposition that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Although that is the law, these are not the circumstances under which imposition of municipal liability for a single decision would be appropriate. The Supreme Court wrote in *Pembaur* that "a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations," and that

a single decision could constitute a policy "whether that action is to be taken only once or to be taken repeatedly." *Id*. at 481. It is clear that the Court was speaking of a deliberate choice on the part of a decision-maker – a *decision* to do something in a particular case, or in every case, or even a decision not to do something. The Court's holding should not be misconstrued as describing an *inadvertent failure* to do something as a constituting a "policy." In this instance, Mills does not allege that any of the actions that deprived him of his property were the result of deliberate decisions made by policymakers, as opposed to mere negligence in carrying out their official duties.

Mill's failure to plead facts that would support a finding of deliberate decision-making by a policymaker is also fatal to his underlying constitutional claims. Mills alleges that he has suffered a due process violation, but the Supreme Court has held that "mere lack of due care by a state official" is insufficient to give rise to a due process violation. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). The Court wrote, "[h]istorically, [the] guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Id*. at 331 (emphasis in original). "Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law."[7] *Id*. at 332. By this standard, it is clear that Mills' alleged injury does not rise to the level of a constitutional violation.

Substantive due process is a particularly circumscribed concept, generally limited to "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v.*

---

[7] The claim in *Daniels* was made under the due process clause of the Fourteenth Amendment, but for present purposes, the same analysis holds for the due process clause of the Fifth Amendment.

*Oliver*, 510 U.S. 266, 272 (1994) (plurality opinion). In order to state a substantive due process claim, the "plaintiff must at least show that state officials are guilty of grave unfairness, which requires demonstrating either a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights. By contrast, [i]nadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress." *Elkins v. District of Columbia*, 690 F.3d 554, 562 (D.C. Cir. 2012) (internal quotations and citations omitted). Mills has failed to adequately allege facts suggesting a "deliberate flouting of the law," rather than mere error or negligence, thus, the Court finds substantive due process entirely inapplicable in this circumstance. Given its conclusions regarding Mills' constitutional claims, the Court need not address the issue of whether those claims are time-barred.

**V.     State Law Claims**

With the dismissal of Mill's federal claims, this Court no longer has a basis for jurisdiction. To the extent that Mills asserts any state common law claims, which is far from apparent from his complaint, the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ( "The district court[ ] may decline to exercise supplemental jurisdiction" where it has "dismissed all claims over which it has original jurisdiction."); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Agudas Chasidei Chabad of U.S. v. Russian*

*Fed'n*, 528 F.3d 934, 950 (D.C. Cir. 2008) ("There is a substantial presumption in favor of a plaintiff's choice of forum." (citations omitted)).  Mills may pursue any common law claims that he may have by re-filing in Superior Court.

## CONCLUSION

For the foregoing reasons, the Court grants the District's Motion to Dismiss.  A separate Order accompanies this Memorandum Opinion.

>                    /s/
> ELLEN SEGAL HUVELLE
> United States District Judge

DATE: January 30, 2013